LAW LIBRARY

FILED
SUPERIOR COURT
OF GUAM

2014 FEB -3 PM 4: 35

CLERK OF COURT
BY:_____

## IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

           Plaintiff,

           vs.

DAVID Q. MANILA AND ANTHONY T. QUENGA,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CRIMINAL CASE NO. CF20-08

DECISION AND ORDER:
MOTION FOR A NEW TRIAL &
MOTION TO REDUCE CONVICTIONS
AS TO FIRST TWO CHARGES TO
SECOND DEGREE FELONIES

### INTRODUCTION

This matter came before the Honorable Anita A. Sukola on November 22, 2013, on David Q. Manila's and Anthony T. Quenga's ("Defendant Manila" & "Defendant Quenga" respectively) Motion for New Trial and Motion to Reduce Convictions as to First Two Charges to Second Degree Felonies. Defendant Manila was represented by Attorney Terence E. Timblin. Defendant Quenga was represented by Attorney Sylvia L.G. Stake. The People of Guam ("the People") were represented by Assistant Attorney General Christopher R. Odoca. Following the hearing, the Court took the matter under advisement. Upon review of the oral and written arguments, and legal authorities presented by the parties, the Court issues its Decision and Order **DENYING** Defendants' motions.

### BACKGROUND

Defendants were initially indicted by a Superior Court of Guam Grand Jury on November 16, 2012. A Second Superseding Indictment was returned on Friday, November 23, 2012. On March 15, 2013, a Third Superseding Indictment was charged out against both



*ORIGINAL*

Defendants. Finally, on July 31, 2013, a Fourth Superseding Indictment was returned. Defendant Manila is charged with the following: (1) Conspiracy to Commit Kidnapping (as a 1st Degree Felony) (9 counts); (2) Kidnapping (as a 1st Degree Felony) (9 counts); (3) Conspiracy to Commit Felonious Restraint (as a 3rd Degree Felony) (9 counts); (4) Felonious Restraint (as a 3rd Degree Felony) (9 counts); (5) Conspiracy to Compel Prostitution (as a 3rd Degree Felony) (9 counts); (6) Compelling Prostitution (as a 3rd Degree Felony) (9 counts); (7) Conspiracy to Promote Prostitution (as a 3rd Degree Felony) (10 counts); (8) Promoting Prostitution (as a 3rd Degree Felony) (10 counts); (9) First Degree Criminal Sexual Conduct (as a 1st Degree Felony) (2 counts); (10) Second Degree Criminal Sexual Conduct (as a 1st Degree Felony) (2 counts); (11) Criminal Intimidation (as a Misdemeanor); and (12) Official Misconduct (as a Misdemeanor). Fourth Superseding Indictment (Jul. 31, 2013).

The Fourth Superseding Indictment charges Defendant Quenga as follows: (1) Conspiracy to Commit Kidnapping (as a 1st Degree Felony) (9 counts); (2) Kidnapping (as a 1st Degree Felony) (9 counts); (3) Conspiracy to Commit Felonious Restraint (as a 3rd Degree Felony) (9 counts); (4) Felonious Restraint (as a 3rd Degree Felony) (9 counts); (5) Conspiracy to Compel Prostitution (as a 3rd Degree Felony) (9 counts); (6) Compelling Prostitution (as a 3rd Degree Felony) (9 counts); (7) Conspiracy to Promote Prostitution (as a 3rd Degree Felony) (10 counts); (8) Promoting Prostitution (as a 3rd Degree Felony) (10 counts); (9) First Degree Criminal Sexual Conduct (as a 1st Degree Felony); (10) Second Degree Criminal Sexual Conduct (as a 1st Degree Felony) (2 counts); (11) Attempted First Degree Criminal Sexual Conduct (as a 1st Degree Felony); (12) Attempted Second Degree Criminal Sexual Conduct (as

a 1st Degree Felony); (13) Criminal Intimidation (as a Misdemeanor); and (14) Official Misconduct (as a Misdemeanor). Fourth Superseding Indictment (Jul. 31, 2013).

Jury selection and trial commenced for Defendants Manila and Quenga on July 29, 2013. After several weeks of trial, a jury of twelve returned verdicts on September 19, 2013. The jury found both Defendants guilty of most of the charges and counts as contained in the Fourth Superseding Indictment. See Verdict Forms: CF20-08 (Sep. 19, 2013).

Defendant Quenga filed a Motion for New Trial on October 8, 2013. Defendant Manila joined in on the motion. See Def. Manila's Joinder (Oct. 10, 2013). On October 9, 2013, Defendant Manila filed a Motion to Reduce Convictions as to First Two Charges to Second Degree Felonies. Defendant Quenga also joined in on the motion. See Joinder by Def. Anthony Quenga (Oct. 14, 2013). The People filed their opposition to Defendants' Motion for New Trial on October 31, 2013. Likewise, on November 6, 2013, the People filed an amended opposition. Similarly, the People filed their opposition on November 8, 2013 to Defendants' Motion to Reduce Convictions as to First Two Charges to Second Degree Felonies. The Court heard both matters on November 22, 2013 and now issues its Decision.

## DISCUSSION

**Motion for New Trial**

Guam law provides the following grounds for granting a new criminal trial:

(a) The court on motion of a defendant may grant a new trial to him if required in the interests of justice.
(b) If the trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment.
(c) A motion for a new trial based upon the ground of newly discovered evidence may be made only before or within two (2) years after final judgment, but if an appeal is pending the court may grant the motion only on remand a [sic] of the case.

(d) A motion for a new trial based on any ground other than the ground of newly discovered evidence shall be made within seven (7) days after verdict or finding of guilty or within such further time as the court may fix during the seven-day period.

8 GCA § 110.30 (2005).

"The trial court's discretion to grant a new trial is much broader than its power to grant a judgment of acquittal in that the trial court 'need not view the evidence in the light most favorable to the verdict.'" *People v. Quinata*, 1999 Guam 6 ¶ 18 (citing *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980). This broader grant of discretion allows the trial court to weigh the evidence and evaluate for itself the credibility of the witnesses." *Id.* In view of this, appellate courts favor deferring to a trial court's determination of a motion for a new trial. "The trial judge is in a much better position to evaluate the credibility and demeanor of the witnesses." *People v. Leslie*, 2011 Guam 23 ¶ 20. Moreover, consideration of specific support for the court's determination and whether the case is exceptional meriting a new trial are other factors to sustain a court's ruling on a motion for a new trial. *Id.* at ¶¶ 23-25.

In the instant case, Defendant Quenga lists thirteen reasons as the basis for granting a new trial. The Court will address the list of Defendant Quenga's points in the order in which they were presented.

(1) <u>Time Deadline to Request a New Trial.</u> Defendant Quenga contends that the trial lasted over a period of a month and there is no trial transcript available at this time. Based on this fact, Defendant Quenga argues that "[t]he whole case file had to be reviewed for irregularities that are the most prominent from the defendant's perspective and the seven day time limit is not sufficient to accomplish this task." <u>Def. Quenga's Mot. for New Trial</u> at 3 (Oct. 8, 2013). In response, the People of Guam "DISAGREE that the seven

(7) day time limit is 'automatically extended' in this situation.'" People's Opp'n. Mot. at 3 (Oct. 31, 2013). On this issue, the Court agrees with the People that the seven day time limit is not automatically extended. However, the Court heard the matter on its merits pursuant to 8 GCA § 110.30(a) in the interests of justice on November 22, 2013. Therefore, the concern regarding time sensitive deadlines is moot and 8 GCA §110.30(d) is inapplicable.

(2) Prosecutorial Misconduct or Misconduct.

(a) Defendant Quenga argues that "[t]he prosecutor, in his rebuttal on closing, expresses his personal opinion concerning the guilt of the defendants." Def. Quenga's Mot. for New Trial at 3 (Oct. 8, 2013). "In rebuttal to the undersigned's quote of Benjamin Franklin['s] statement, that it is better that one hundred men escape a guilty verdict than that one innocent man should suffer, the prosecutor stated, 'These men aren't innocent. They're guilty!'" Id. The Court agrees with the People that "improprieties in arguments do not require new [a] new trial unless so gross as probably to prejudice defendant and prejudice has not been neutralized by [the] trial judge." *United States v. Rich*, 580 F.2d 929, 936 (9th Cir. 1978). In review of this statement, the Court finds that the People did not say "They're guilty." Instead, the People mentioned in the context of the quote that "these men aren't innocent." Further, the Court does not find any serious miscarriage of justice occurred in the case at bar. The Court agrees with the People that in the context of multiple and extensive references to the evidence presented and the testimony of the over seventeen (17) witnesses, the statement after seven weeks of jury selection and trial

People v. Manila & Quenga (CF20-08)
Mot. for New Trial & Mot. to Reduce Convictions as to First Two Charges to Second Degree Felonies

is not sufficient to merit a new trial. In addition, the Court instructed jurors in Jury Instruction 3K that "Arguments and statements by lawyers are not evidence." On this basis, the Court does not find grounds for a new trial.

(b) <u>Testimony of Arneen Tipingeni Regarding Scars.</u> Defendant Quenga argues that the prosecutor commented on evidence that had not been offered on the record in reference to alleged rape victim Arneen Tipingini. Further, Defendant Quenga contends that this particular witness created a surprise upon the defense for several reasons. The Court reiterates that Jury Instruction 3K stated very clearly, "Arguments and statements by the lawyers are not evidence." With respect to discrepancies in testimony, the Court refers to Jury Instruction 4G which directs jurors on dealing with such. At the same time, the Court agrees with the People that the witnesses/victims were subject to vigorous cross examinations by Defendants' counsels.

(c) <u>Testimony of Simirina Samuel.</u> Defendant Quenga asserts that the second witness Simirina Samuel changed her testimony at trial and claimed that Defendant Quenga had sexual intercourse with her, contradicting former statements made to other law enforcement officers earlier. Defendant Quenga goes on to argue that the prosecutor, put words "into the mouth of the witness or leading her, asked the rhetorical question, now you know that it's wrong to have lied to agent Dodd, implying there her in-court testimony that the sexual intercourse actually took place was the truthful statement—characterizing and indirectly vouching for the witness' in-court testimony as being the truthful one." <u>Def. Quenga's Mot. for New Trial</u> at 7

(Oct. 8, 2013). Defendant Quenga contends that [t]his is a mischaracterization of her inconsistent statements and it was an effort to vouch for this witness." Id.

The Court in review of this contention does not find any vouching on the part of the People. The inconsistencies of the in-court testimony of Simirina Samuel when compared to the discovery was clearly and thoroughly brought out during the vigorous cross examination by both Defendant Quenga and Defendant Manila's counsels. The Court agrees with the People that this is precisely the purpose of cross-examination and both Defendants' counsels exercised their clients' rights to cross-examine Simirina Samuel on the inconsistencies. Again, the Court instructed the jurors on how to deal with Witness Willfully False. See Jury Instruction: CF 20-08 at 4M (Sept. 19, 2013).

(3) Statements by Co-Defendants Saknin Weria and Freda Eseun. Defendant Quenga argues that "it was error to admit statements early in the trial from witnesses Saknin Weria and Freda Eseun who were codefendants that had entered plea agreements with the government because the prosecutor stated that their statements were those of co-conspirators and constituted admissions by a party-opponents." Def. Quenga's Mot. for New Trial at 7-8 (Oct. 8, 2013). Defendant Quenga further argues that the statements by the two codefendants "could have been admitted on the basis that they were made or for the effect on the hearer, but not as hearsay, since the statement was being offered for the truth of what was asserted. Id. at 8. Defendant Quenga also contends that no instruction was given to that effect to ensure that the jurors did not take the hearsay statement as being true but only that they were made." Id.

The Court agrees with the People that the Saknin Weria and Freda Eseun's statements were properly admitted under the Guam Rules of Evidence and their testimony on the stand satisfied the Confrontation Clause of the United States Constitution. Again, both codefendants were subject to vigorous cross examination by both Defendants' counsels regarding their inconsistencies and bias. Moreover, contrary to Defendant Quenga's contention, there was a specific jury instruction on this matter. Jury Instruction 4N provided for "Testimony of Accomplice of Codefendant to be Viewed with Care and Caution." On this basis, the Court does not find grounds for a new trial.

(4) <u>Trial Atmosphere</u>. Defendant Quenga argues that "[t]he atmosphere in which the trial took place was highly charged and prejudicial because of the extensive daily coverage by all media, radio, tv and newspapers." <u>Def. Quenga's Mot. for New Trial</u> at 8 (Oct. 8, 2013). While Defendants contend that "[t]he jurors were not voir dired daily to see if they had obtained any information concerning the trial not obtained through evidence introduced at trial[,] [t]he defense did not ask for this." <u>Id</u>.

The Sixth Amendment guarantees a criminal defendant a right to a trial by a fair and impartial jury. *See People v. Flores*, 2009 Guam 22 ¶ 89 (citing U.S. CONST. amend. VI). Thus, "the jury's verdict must be based solely upon the evidence presented at trial, and not on extraneous information." <u>Id</u>. In light of media attention to this case, the Supreme Court of Guam has held that "a trial court maintains a certain degree of discretion and will not be required to poll the jury on every occasion." <u>Id</u>. at ¶ 102. Here, the Defendants did not ask for a voir dire of the jury everyday, nevertheless, the

Court did admonish the jurors at the close of each day. All necessary steps were taken to ensure the jury kept an open mind.

Defendant Quenga also notes that a gag order was imposed in this case. However, "when the AG came out with a 4th Superseding Indictment, their spokeswoman freely spoke to the media and characterized the change as being minor and only involved the change of a birthdate of the victim in the alleged criminal sexual conduct." Def. Quenga's Mot. for New Trial at 8 (Oct. 8, 2013). As noted by Defendant Quenga, the Court agrees with the People that the information released was clearly visible and discernible by anyone comparing the two indictments, and it is therefore deemed public record. On this basis, the Court does not find grounds for a new trial.

(5) Fourth Superseding Indictment v. Amendment. Defendant Quenga argues that "since the AG's office opted to use only initials [f]or the accusers, the only identifying factor was the date of birth. The two sisters, Arita and Arneen both had the same initials so the only distinguishing factor was their date of birth in the CSC charges." Id. at 9. Defendant Quenga contends that the People came out with a 4th Superseding Indictment, changing the birthdate and therefore the alleged victim or accuser from Arita to Arneen. Defendant Quenga argues that this change affected the substantial rights of the defendant because the defense that had built up for Arita had been obviated.

The People address this contention by distinguishing between amending an indictment and submitting the matter the grand jury for a superseding indictment. Defendant himself filed a motion relative to the birthdate discrepancy. Therefore, no surprise factor is plausible. Here, no amendment took place and instead a superseding indictment was

returned. Likewise, considering the posture of the case in terms of Defendants' assertion at various stages, the Court was cognizant of ensuring Defendants had their trial. Accordingly, "[t]he defendant is entitled to at least five (5) days after entering his plea to prepare for trial but he may waive any part of such time." 8 GCA § 80.40. There was more than five days from the commencement of the jury selection and the taking of testimony from the witness/victim in question. On this basis, the Court does not find grounds for a new trial.

(6) <u>Testimony of Martha Welle</u>. Defendant Quenga contends that Martha Welle's testimony was surprising because she had previously identified two other officers at Blue House and had misidentified Defendant Manila in a photo array, yet in court identified Quenga as the officer who had spoken to her. The Court points to Jury Instruction 4G "Discrepancies in Testimony" and Jury Instruction 4M "Witness Willfully False." These instructions were given to the jury to address such a concern and Defendants' counsels had ample opportunity to vigorously cross-examine the victim/witness. On this basis, the Court does not find grounds for a new trial.

(7) <u>Alleged Coaching</u>. Defendant Quenga argues that many of the witnesses/hostesses at the Blue House club caused surprise because they had made one hundred and eighty degree changes in their testimonies from what was provided in discovery. On that account, Defendant Quenga contends that "it was obvious that the witnesses had been coached and even the FBI agent Jason Dodd admitted on the stand that he prompted some of the witnesses when he suggested the names of Mario and Tony to the witnesses." <u>Def. Quenga's Mot. for New Trial</u> at 10 (Oct. 8, 2013).

"The People take umbrage at the unfounded accusation that the witnesses/Victims were coached." People's Amended Opp'n. Mot. at 8 (Nov. 6, 2013). The Court agrees with the People that discrepancies in testimony given to law enforcement officers and subsequent testimony given at trial are common. "That is why there is a Confrontation Clause to allow for the Defendants to put pressure on witnesses." Id. The Court also recognizes that Jury Instruction 4A "Credibility of Witness and Jury Instruction 4B "Credibility of Witness—Discrepancies" address this concern. On this basis, the Court does not find grounds for a new trial.

(8) Playback of Recorded Testimony. Defendant Quenga argues that pursuant to 8 GCA §105.18, his attorney was not called in to have testimony repeated at the request of the jury while they were already deliberating. Defendant Quenga does not point to any specific request of a playback. The Court notifies counsels of every request made by the jury. Likewise, the Court also inquires whether counsels wish to be present at the conclusion of each day, while jurors are deliberating. The People had no objection to a playback in their absence so long as conducted by the Court. It is this Court's recollection that this was also Defendants' desire. Nevertheless, the Court still informed counsels of any developments and/or requests made by the jury throughout their deliberations. On this basis, the Court does not find grounds for a new trial.

(9) Testimony of Co-Defendants Saknin Weria, Freda Esuen & Mario Laxamana. Defendant Quenga argues that "testimonies of codefendants and co-conspirators were admitted against objections without the prosecution first presenting sufficient evidence to meet the preponderance of the evidence burden of proof that a conspiracy existed."

<u>Def. Quenga's Mot. for New Trial</u> at 11 (Oct. 8, 2013). He further argues "[t]hat principle should have been applied to incriminating statements made by the codefendants Saknin Weria, Freda Eseun, and Mario Laxamana." <u>Id.</u>

The People object to this contention. The People respond saying "[codefendants] entered a plea agreement and testified. Their plea agreements outlined part of their involvements in the crime." <u>People's Amended Opp'n Mot.</u> at 9 (Nov. 6, 2013).

The Court notes that before the codefendants took the stand, witnesses were called which provided sufficient evidence as to their involvement to make their testimony relevant by a preponderance of evidence. Additionally, testimonies of the codefendants was subject to vigorous cross-examination as afforded by our Guam Rules of Evidence. On this basis, the Court does not find grounds for a new trial.

(10) <u>District Court Testimony of Defendant Manila.</u> Defendant Quenga argues that Defendant Manila's former testimony from the District Court of Guam trial involving Co-Defendant Song Ja Cha was admitted and read into the record verbatim by the federal court reporter, before Co-Defendant Manila took the stand, "at which time such testimony could properly have been used as impeachment material." <u>Def. Quenga's Mot. for New Trial</u> at 11 (Oct. 8, 2013).

Guam Rules of Evidence 804(b)(3) clearly allows for the admissibility of Defendant Manila's former testimony at the District Court of Guam. The "corroborating circumstances clearly indicate the trustworthiness of the statement," considering it was given under oath at the District Court of Guam. Whether it was admitted before he testified, it was former testimony and its trustworthiness was made clear through the

federal court reporter's assistance of reading it into the record. On this basis, the Court does not find grounds for a new trial.

(11)     Conspiracy Charges. Defendant Quenga repeats his objection to the conspiracy charges, arguing that "they contained no overt acts in the indictment." Def. Quenga's Mot. for New Trial at 11 (Oct. 8, 2013). The Court agrees with the People that this issue was properly resolved when the Defendants raised this issue via pre-trial motion and during the trial. "The Trial Jury, which heard all the evidence, listened to all the cross-examinations [and] found the Defendants guilty." People's Amended Opp'n. Mot. at 10 (Nov. 6, 2013). On this basis, the Court does not find grounds for a new trial.

(12)     Conspiracy Charges. Defendant also highlights that there were four conspiracy charges with four different underlying substantive crimes. Similar to the Court's previous response, this Court properly resolved this issue when raised by the Defendants during pre-trial motion and during the course of trial. On this basis, the Court does not find grounds for a new trial.

(13)     Shortened/Hastened Proceedings. Defendant Quenga argues that "[t]he fact that the prosecutor had to go off island shortened and hastened all the proceedings after he had finished his case in chief. It squashed the remainder of the trial into a short time span—to present the defendants' cases-in-chief, to review and agree on which jury instructions to include in the packet that would go to the jury, and to present closing arguments." Def. Quenga's Mot. for New Trial at 12 (Oct. 8, 2013).

The Court finds that Defendants' counsels never complained about being rushed or hastened. No objections were made concerning the assigned prosecutor's possible

substitution should it be necessary. The Court consistently inquired from Defendants on how much time was needed. Likewise, Defendant Quenga's counsel argues that she had forwarded "most jury instructions to chamber staff over the weekend as instructed, [but] was barely able to get any of those proposed considered because of the time constraint." Id. The Court considered each parties' proposed instructions. It is for this reason that the Court consistently requested counsel to submit their completed instructions ahead of time. Nevertheless, the Court considered all instructions at the scheduled conference before closing arguments and final reading to the jury. If proposed instructions were not included, it is because the Court found it inapplicable to the case after review. However, the Court considered every submission from counsel. In fact, counsel also noted that the Court was so responsive at 3:30 in the morning to confirm receipt of the proposed jury instructions. On this basis, the Court finds no grounds for a new trial.

Based on the foregoing, the Court is satisfied that the convictions for which Defendants have moved for a new trial are firmly supported by the evidence presented. After presiding over the jury trial and listening to all the testimony, the Court finds that this is not an exceptional case in which the totality of the evidence weighs so heavily against the verdict, that Defendants should be granted a new trial. Accordingly, Defendants' Motion for a New Trial is **DENIED**.

**Motion to Reduce Convictions as to First Two Charges to Second Degree Felonies**

Defendant Manila moves the Court to reduce the first two charges in the Fourth Superseding Indictment from First Degree Felonies to Second Degree Felonies. Defendant Quenga joins in on this motion. The motion concerns nine counts of Conspiracy to Commit Kidnapping as a First Degree Felony and 9 counts of Kidnapping as a First Degree Felony.

Defendants argue that "the evidence presented by the Government tended to prove a conspiracy between Co Defendant Song Ja Cha and Serko Tipingeni to bring the complaining witnesses to Guam to work as prostitutes at the Blue House against their will, by deceiving them into believing that they would be working at legitimate jobs in a store or restaurant and then preventing them from leaving." Def. Manila's Motion to Reduce Convictions as to First Two Charges to Second Degree Felonies at 2 (Oct. 9, 2013). Defendant Manila further argues that "[n]o evidence was presented that [he] or Co Defendant Anthony Quenga had anything to do with their being brought to Guam or beginning to work as prostitutes." Id. Moreover, Defendant moves to have the first two charges reduced to Second Degree Felonies since "a defendant cannot be convicted of failure to release in a safe place without having first removed the victim to an unsafe place." Id. at 4-5.

The People oppose Defendants' motion. The People rest their opposition on three contentions: (1) A plain reading of 9 GCA § 22.20 provides that kidnapping is generally a first-degree felony when a person unlawfully confines another; (2) The Legislature intended to make kidnapping by confinement a first-degree felony; and (3) Case law clearly supports the proposition that kidnapping by way of confinement can be a first-degree felony." See People's Opp'n. Mot. (Nov. 8, 2013).

Guam law provides the following relative for Kidnapping:

**§22.20. Kidnapping; Defined & Punished**

 (a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found; or if he unlawfully confines another for a substantial period, with any of the following purposes:
 (1) to hold for ransom or reward;
 (2) to facilitate commission of any felony or flight thereafter;

(3) to inflict bodily injury on or to terrorize the victim or another; or

(4) to interfere with the performance of any governmental or political function.

(b) Kidnapping is a felony of the first degree unless the defendant voluntarily releases the victim alive and in a safe place prior to trial, in which case it is a felony of the second degree. In the case of kidnapping as a felony of the first degree, the court shall impose a sentence of imprisonment of a minimum term of ten (10) years and may impose a maximum sentence of up to twenty-five (25) years; said minimum term shall not be suspended nor probation be imposed in lieu of such minimum term nor shall parole or work release be granted before completion of the minimum term. The sentence shall include a special parole term of not less than three (3) years in addition to such term of imprisonment.

(c) A removal or confinement is unlawful within the meaning of this section if it is accomplished by force, threat or deception, or, in the case of a person who is under the age of fourteen (14) or incompetent, if it is accomplished without the consent of a parent, guardian or other person responsible for general supervision of his welfare.

9 GCA § 22.20 (2005).

In review of the instant motion, the Court agrees with the People. The Court looked at the statute and legislative history affecting kidnapping. *See People v. Jose Rios Camacho, Jr.* 2013 Guam 3 ¶ 12. The statute when read as a whole, is clear that the Legislature intended to make kidnapping by way of confinement a first degree felony. Nothing in Public Law 14-143, which amended section 22.20 (b) to its current form, indicates in any way that the Legislature intended to exclude kidnapping by way of confinement as a first degree felony. The Court also recognizes that the trial jurors were given lesser included offenses of second degree felonies to consider. In the end, they still returned verdicts on the first degree felony charges of Charges 1 and 2 of the Fourth Superseding Indictment. On that basis, the Court does not find reason to reduce the charges to second degree felonies. Accordingly, Defendants' Motion to Reduce Convictions as to First Two Charges to Second Degree Felonies is **DENIED.**

///

## CONCLUSION

By preponderance of the evidence and based on the foregoing reasons, the Court **DENIES** Defendants' Motion for New Trial and Motion to Reduce Convictions as to First Two Charges to Second Degree Felonies.

The Court has one other matter under advisement concerning Defendants Manila and Quenga. Sentencing will be scheduled upon disposition of that motion.

**SO ORDERED** this ___3___ day of FEBRUARY, 2014.



HONORABLE ANITA A. SUKOLA
Judge, Superior Court of Guam

FEB - 4 2014

Page | 17
People v. Manila & Quenga (CF20-08)
Mot. for New Trial & Mot. to Reduce Convictions as to First Two Charges to Second Degree Felonies